1

2                                                      FILED

3                                            2013 FEB -4  AM 8: 25

4                                            CLERK US DISTRICT COURT
                                             SOUTHERN DISTRICT OF CALIFORNIA
5                                            BY_____DEPUTY

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   HAROLD ANTHONY VELARDE,                 CASE NO. 11cv0287-AJB(KSC)

12                          Plaintiff,       **REPORT AND**
                                             **RECOMMENDATION RE**
           vs.
13                                           **DEFENDANT'S MOTION FOR**
                                             **SUMMARY JUDGMENT**
14   E. DUARTE,
                                             [Doc. No. 41]
15                          Defendant.

16          Plaintiff Harold Anthony Velarde, a state prisoner now proceeding through counsel, filed a

17   Complaint under the Civil Rights Act, 42 U.S.C. Section 1983, alleging a single cause of action for

18   excessive force against defendant E. Duarte, a correctional officer at the prison where plaintiff is

19   housed. [Doc. No. 1.] Currently pending before the Court is defendant's Motion for Summary

20   Judgment. [Doc. No. 41.] Based on the moving and opposing papers, the evidence presented, and the

21   relevant law, it is RECOMMENDED that defendant's Motion for Summary Judgment be GRANTED.

22                                  *I. Background*

23          The Complaint alleges that after a riot occurred in the prison on October 6, 2009 two

24   correctional officers came to the door of plaintiff's cell and told him to "cuff up." Defendant Duarte

25   was one of the officers. After plaintiff was handcuffed through the food porthole of his cell, the cell

26   door was opened, and he was ordered to face the wall and walk backwards out of the cell. Plaintiff

27   alleges that defendant Duarte grabbed his neck from behind and slammed his face into the wall.

28   Because of the surprise, plaintiff claims he turned away from the wall and defendant Duarte grabbed

1   his shoulders and pushed him down. According to plaintiff, his leg was broken during the incident

2   due to a prior injury from a gunshot wound. He was taken to the hospital, where he had surgery to

3   place a steel plate inside his femur bone. [Doc. No. 1, at p. 2-3.] In support of his claim, plaintiff

4   attached an Operative Report to his Complaint describing the surgery that was performed on his leg.

5   [Doc. No. 1-1, at pp. 1-6.]

6          As a result of the incident on October 6, 2009 that serves as the basis for the allegations in the

7   Complaint, plaintiff was found guilty in a prison disciplinary proceeding of battery on a peace officer.

8   [Doc. No. 41-3, at p. 17.] He also pled "no contest" in El Centro Superior Court to a violation of

9   California Penal Code Section 243.1, battery against a custodial officer in the performance of his

10  duties. [Doc. No. 41-2, at p. 9-10.][1]

11                                      ***II.  Discussion***

12         Defendant Duarte seeks summary judgment on the ground that plaintiff's Section 1983 claim

13  is barred by the favorable termination doctrine set forth by our Supreme Court in *Heck v. Humphrey*,

14  512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). According to defendant, the

15  favorable termination doctrine bars plaintiff's excessive force cause of action because he was

16  previously found guilty in a prison disciplinary proceeding and pled no contest in a state court criminal

17  action to battery on defendant Duarte in the connection with the exact same incident that serves as the

18  basis for his Section 1983 claim. Defendant argues that plaintiff cannot pursue his Section 1983

19  excessive force claim without first overturning these prior findings and convictions. Plaintiff contends

20  that the favorable termination doctrine does not apply under the particular facts of the case.

21         Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

22  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

23  to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party initially bears the burden of

24  proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

25  (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only

26  prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If the

27

28         [1]     Defendant's request for judicial notice is granted, as the Court can take judicial notice
    of court records from another case. *See, e.g., U.S. v. 14.02 Acres of Land More or Less in Fresno
    County*, 547 F.3d 943, 955 (9th Cir. 2008).

1   moving party meets that burden, the burden shifts to the non-moving party to designate specific facts

2   demonstrating the existence of genuine issues for trial. *Id.* at 324.

3                    ### *A.  Favorable Termination Doctrine*

4           In *Heck v. Humphrey*, 512 U.S. at 477, the United States Supreme Court held that a plaintiff

5   who is convicted of a crime under state law cannot seek damages in a Section 1983 action if a

6   judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence."

7   *Id.* at 487. An action must be dismissed under *Heck v. Humphrey* if the plaintiff "would have to negate

8   an element of the offense of which he has been convicted" in order to prevail in his Section 1983

9   action. *Id.* at 487 n.6. In other words, "if a criminal conviction arising out of the same facts stands

10  and is fundamentally inconsistent with the unlawful behavior for which Section 1983 damages are

11  sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (1996). In

12  *Edwards v. Balisok*, 520 U.S. at 647-648, the United States Supreme Court extended this rule to

13  adverse findings in a prison disciplinary proceeding that affect a prisoner's term of confinement, such

14  as the deprivation of good time credits. Reading *Heck v. Humphrey* and *Edwards v. Balisok* together,

15  it is well established that "the favorable termination rule turns solely on whether a successful Section

16  1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that

17  affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir.

18  2003).

19          A Section 1983 action should be allowed to proceed, however, if the District Court determines

20  that success on the merits will not invalidate a conviction against the plaintiff. *Heck v. Humphrey*, 512

21  U.S. at 487. In some cases, a cause of action for excessive force under Section 1983 is not barred

22  under *Heck v. Humphrey*, because the factual basis for the conviction is divisible from the alleged use

23  of excessive force, and, as a result, success on the merits of the claim would not necessarily imply the

24  invalidity of a conviction. In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), for example, Smith

25  pled guilty to resisting arrest under California Penal Code Section 148(a)(1). *Id.* at 694. He then filed

26  a complaint under Section 1983 alleging that police used excessive force when they sprayed him with

27  pepper spray and instructed a police dog to attack him. *Id.* at 694-695. Defendants filed a summary

28  judgment motion based on the favorable termination doctrine. However, the Ninth Circuit concluded

1    that Smith's excessive force allegations were not barred under *Heck v. Humphrey*, 512 U.S. at 477,

2    because the facts indicated it was possible that police used excessive force against Smith after he

3    engaged in the conduct that served as the basis of his conviction for resisting arrest. *Smith*, 394 F.3d

4    at 699. The facts at issue were not seriously disputed. Viewed in the light most favorable to Smith

5    as the nonmoving party, the facts indicated that he committed a number of acts constituting the crime

6    of resisting arrest during two different phases. *Id.* at 693-694, 695-697. First, he resisted, delayed, or

7    obstructed police during an investigatory phase before police decided to arrest him. During this phase,

8    police issued verbal commands, all of which were within the bounds of their general police powers,

9    and there was no physical contact between Smith and police that could constitute excessive force.

10   During this phase, Smith refused to comply with police directives to take his hands out of his pockets

11   or to put his hands on his head and turn around as directed so police could confirm he did not have a

12   weapon. *Id.* at 693-694, 696-697. "Each of these acts constituted a violation of § 148(a)(1) sufficient

13   to warrant the filing of a criminal charge." *Id.* at 697.

14           In the second phase, after police decided to take Smith into custody, he continued to disobey

15   police commands in violation of Section 148(a)(1) while officers applied force to subdue him and

16   make an arrest. *Id.* at 694, 697. Smith then pled guilty to a single count of resisting arrest without

17   admitting a precise factual basis for the offense. *Id.* at 698. Because it was not possible to determine

18   the factual basis for the offense, the Ninth Circuit concluded it was "entirely possible that, as Smith

19   asserts, he pled guilty to a violation of § 148(a)(1) on the basis of his actions during the time the

20   officers were conducting their lawful investigation." *Id.* at 698. Plaintiff could therefore pursue his

21   excessive force claim to the extent it was based on police conduct during the second phase of his

22   encounter with police when they were attempting to subdue him and effect an arrest, because success

23   on the merits would not necessarily invalidate the conviction. *Id.* at 698-699

24           On the other hand, an excessive force claim under Section 1983 is barred under *Heck v.*

25   *Humphrey*, 512 U.S. at 477, when the factual basis for the underlying conviction is clear, and the

26   excessive force claim is not in any way divisible from that factual basis. For example, in *Cunningham*

27   *v. Gates*, 312 F.3d 1148 (9th Cir. 2002), Cunningham's Section 1983 complaint was based on excessive

28   force that allegedly occurred during the course of a robbery and gunfight. *Id.* at 1151-1152. While

1 | conducting surveillance based on a tip, police watched Cunningham and an accomplice rob a liquor
2 | store and run to their getaway car. *Id.* at 1151. Police officers wearing plain clothes and using
3 | unmarked cars then surrounded the getaway car to prevent an escape and a dangerous high-speed
4 | chase. *Id.* A chaotic gun battle ensued, leaving Cunningham paralyzed and his accomplice dead. Two
5 | officers were also injured in the battle. *Id.* Cunningham claimed that he acted in self defense, as the
6 | officers fired first. At the trial on the criminal charges, the jury was instructed that they could only find
7 | Cunningham guilty of felony murder if he committed an intentional provocative act that caused the
8 | accomplice's death and the provocative act was not in self defense. *Id.* As to the attempted murder
9 | counts, the jury was also instructed that it must conclude Cunningham knew or should have known
10 | he was shooting at police officers in the performance of their official duties. *Id.* A jury convicted
11 | Cunningham of several crimes, including felony murder of his accomplice, robbery, burglary, and
12 | attempted murder of the police officers by firing a weapon at them. *Id.*

13 |      In his Section 1983 excessive force cause of action, Cunningham alleged that the plain clothes
14 | officers created a dangerous situation which was likely to result in death when they surrounded the
15 | getaway car and fired their weapons without identifying themselves as police. In other words, it was
16 | Cunningham's contention that he did not provoke the gun battle and that police deliberately created
17 | a situation that caused him to fire in self defense. *Id.* at 1152-1154. Citing *Heck v. Humphrey*, 512
18 | U.S. at 477, the officers sought summary judgment, arguing that Cunningham's claims were barred
19 | because he could not prevail on his theory of the case without implying the invalidity of his
20 | convictions. *Id.* at 1153. The Ninth Circuit agreed, stating that Cunningham's claims necessarily
21 | disputed a number of factual issues that the jury had already decided against him. To prevail on his
22 | Section 1983 excessive force claims, Cunningham would have to prove that he was not responsible
23 | for provoking the gun battle and that the officers were not acting within the scope of their duties when
24 | they surrounded the getaway car. Based on the jury instructions and the jury's verdicts in the
25 | underlying criminal action, these issues were unequivocally decided against Cunningham. Unlike the
26 | circumstances at issue in *Smith v. City of Hemet*, all of the alleged acts of excessive force by the
27 | officers fell within "the temporal scope" of Cunningham's crimes and were not in any way divisible
28 | for purposes of the favorable termination rule. *Id.* at 1154.

1    In a more recent case that is similar in many respects to *Cunningham v. Gates*, 312 F.3d at

2  1148, the Ninth Circuit determined that an excessive force claim under Section 1983 was barred by

3  *Heck v. Humphrey*, 512 U.S. at 477, because the facts were not divisible and a jury had already decided

4  that the deputy acted within the scope of his employment and did not use excessive force. *Beets v.*

5  *County of Los Angeles*, 669 F.3d 1038, 1040, 1045 (9th Cir. 2012). In this case, two accomplices fled

6  from police in a stolen vehicle. They then left the vehicle and ran toward a truck that was parked

7  nearby. Four officers attempted to arrest them while they were getting into the truck. The accomplices

8  fought back and were able to start the engine, and when the driver moved the truck forward, he

9  collided with a patrol car. The driver then backed up rapidly toward one of the deputies. Fearing for

10  his life, the deputy shot and killed the driver. At least two other officers also fired their weapons. The

11  truck stopped moving shortly after the driver was shot. *Id.* at 1040. The surviving accomplice was

12  convicted by a jury of several offenses, including three counts of assault with a deadly weapon upon

13  a peace officer. *Id.* at 1040.

14    The parents of the deceased accomplice filed a Section 1983 action claiming the deputy who

15  shot and killed their son used excessive deadly force. *Id.* at 1041. They attempted to avoid the bar

16  under *Heck v. Humphrey*, 512 U.S. at 477, by arguing they should be allowed to show that the deputy

17  was able to move to the side of the truck where he was no longer in danger before he fired, and that

18  the shooting occurred after their son's criminal activity. *Beets*, 669 F.3d at 1042. Relying on its earlier

19  decision in *Cunningham v. Gates*, 312 F.3d at 1148, the Ninth Circuit concluded that it is not

20  reasonable to separate the criminal activity from the deputy's use of force as there was overwhelming

21  evidence that the two accomplices were forcefully resisting arrest and assaulting police officers. *Id.*

22  at 1043. The use of force during the course of the accomplices' criminal activity successfully brought

23  that activity to an end. *Id.* at 1044-1045. In addition, the jury had been instructed that the surviving

24  accomplice could not be convicted of the crimes unless it first determined that the deputy was lawfully

25  performing his duties and had not used excessive force. *Id.* at 1041. Because the jury's verdict

26  rejected any claim that the deputy used excessive force, the parents' Section 1983 claims were barred

27  under the favorable termination doctrine. *Id.* at 1045.

28  / / /

***B. Effect of Findings Made in Prison Disciplinary Proceeding***

Citing *Hooper v. San Diego*, 629 F.3d 1127 (9th Cir. 2011), plaintiff argues that his cause of action under Section 1983 is not barred under *Heck v. Humphrey*, 512 U.S. at 477, because his allegations of excessive force are divisible from the finding in the prison disciplinary proceeding that he was guilty of battering defendant Duarte. Plaintiff argues that the Court "could easily conclude that [plaintiff] infracted a rule, but still has an excessive force claim for his broken leg. Nothing about the disciplinary hearing procedure required a factual finding that is necessarily inconsistent with an excessive force claim." [Doc. No. 42, at pp. 2-3 n.2.] Plaintiff's arguments are without merit.

In *Hooper v. San Diego*, 629 F.3d at 1127, the Ninth Circuit held that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Id.* at 1134. When a deputy grabbed Hooper's wrist and told her she was under arrest for possession of a controlled substance, she pulled away. During the struggle that followed, Hooper ended up on the ground with the deputy sitting on her back. Viewing the facts in the light most favorable to Hooper, she struggled for a brief time on the ground by moving from side to side and stopped when the deputy was able to hold her hands behind her back. While the deputy was waiting for backup assistance to arrive, he called his canine, and the canine bit Hooper, causing significant injuries. *Id.* at 1129.

Hooper pled guilty to resisting arrest under California Penal Code Section 148(a)(1) and then filed a Section 1983 complaint for excessive force. She did not dispute the lawfulness of her arrest and conceded she resisted the officer in the course of his duties. *Id.* at 1129. "The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1)." *Id.* at 1130. However, Hooper claimed the officer used excessive force in response to her resistance thereafter when he called upon the canine to assist him in making the arrest. *Id.* at 1129.

In reaching its conclusion that Hooper's excessive force claim was not barred under *Heck v. Humphrey*, 512 U.S. at 477, the Ninth Circuit distinguished the case from *Smith v. City of Hemet*, 394 F.3d at 689, where the facts allowed the Court "to differentiate cleanly between two phases of the encounter with police. . . . [I]n Hooper's case, unlike in Smith's there were no distinct phases. Rather, Hooper's arrest was effectuated in a single continuous chain of events lasting a very brief time." *Id.* at

1    1131. In so ruling, the Ninth Circuit moved away from the earlier requirement of distinct 'divisibility'

2    of actions, focusing instead on the interpretation that the conviction for resisting arrest and the claim

3    for excessive force were two distinct events which occurred during one continuous chain of events. *Id.*

4    at 1132.

5          *Hooper v. San Diego*, 629 F.3d 1127, is distinguishable from the facts and circumstances of this

6    case for at least two key reasons. First, the plaintiff in *Hooper* pled guilty to resisting arrest and claimed

7    excessive force based on acts of force that were isolated from the arrest itself and from the lawfulness

8    of the officer's initial conduct in effecting that arrest. Because her Section 1983 claim would not

9    invalidate the facts supporting her underlying criminal conviction, she could proceed. *Id.* at 1132-1133.

10   Here, plaintiff's excessive force allegations are based on the exact same acts that were considered in

11   the prison disciplinary proceeding, and these facts are not in any way divisible from the facts alleged

12   in the Complaint. Second, *Hooper* is distinguishable because she pled guilty, so there was no jury or

13   other fact finder that necessarily determined the facts in a manner that was inconsistent with Hooper's

14   claim of excessive force. *Id.* at 1129. By contrast, and like *Cunningham v. Gates*, 312 F.3d at 1148,

15   and *Beets v. County of Los Angeles*, 669 F.3d at 1038, plaintiff in this case is unable to avoid the bar

16   in *Heck v. Humphrey*, 512 U.S. at 477, because a fact finder made specific factual determinations in the

17   course of a prison disciplinary proceeding that are fundamentally inconsistent with plaintiff's excessive

18   force allegations against defendant Duarte. As a result, success on the merits of plaintiff's excessive

19   force allegations in this case would necessarily imply the invalidity of the findings made in the prison

20   disciplinary proceeding. Such a ruling would be inconsistent with *Heck v. Humphrey*, 512 U.S. at 477

21   and *Edwards v. Balisok*, 520 U.S. at 641.

22         The official record that was made during the course of the prison disciplinary proceeding was

23   submitted in support of  defendant's Motion for Summary Judgment, along with an authenticating

24   Declaration by a correctional administrator who is responsible for maintaining these documents in the

25   ordinary course of the prison's operations. [Doc. No. 41-3.] The record of the prison disciplinary

26   proceeding shows that defendant Duarte signed a Rules Violation Report shortly after the incident on

27   October 6, 2009. Defendant Duarte explained that on October 6, 2009, he and Officer Tamayo were

28   investigating an attempted murder of a peace officer. They approached plaintiff's cell and ordered

1  plaintiff to place his hands in the food port so he could be handcuffed. After plaintiff's hands were

2  secured in handcuffs, the cell door was opened. Defendant Duarte began a clothed body search for any

3  signs that plaintiff had been involved in the earlier incident they were investigating. Plaintiff "spun his

4  upper body towards [defendant] and attempted to strike [defendant's] facial area utilizing his forehead.

5  [Defendant] moved [his] head out of the way. . . [Plaintiff] struck the top of [defendant's] right shoulder

6  utilizing his forehead. Defendant immediately grabbed on to [plaintiff's] arms, utilizing [his] left and

7  right hands. Utilizing [his] strength and body weight, [defendant] forced [plaintiff] to the ground. Once

8  on the ground, [defendant] placed [his] arms in the middle of [plaintiff's] back assisted by S&I Officer

9  Tamayo, until [they] were able to gain compliance. [Plaintiff] stopped his aggressiveness and began

10  to complain about his knee. Medical staff was immediately advised and requested to proceed to

11  Housing Unit B2. Custody of [plaintiff] was relinquished to facility B staff and he was transported to

12  the Triage Treatment Area (TTA) for further treatment. . . ." [Doc. No. 41-3, at p. 4.]

13        On October 17, 2009, plaintiff requested assistance by an investigative employee. [Doc. No.

14  41-3, at p. 5.] On or about March 24, 2010, an investigative employee was assigned to assist plaintiff

15  with the case, and he was able to interview witnesses. [Doc. No. 41-3, at p. 5-12.]

16        On April 3, 2010, a prison disciplinary hearing was held before a senior hearing officer (SHO).

17  During the hearing, the SHO questioned another inmate who was present during the incident on

18  October 6, 2009. This witness said it appeared plaintiff was being "ruffed up" by the officers after they

19  placed him in handcuffs. He also said: "It seemed like they were questioning him, then it looked like

20  they took him down." [Doc. No. 41-3, at p. 14.] When asked how plaintiff ended up on the floor, the

21  witness said, "The officers grabbed him and threw him down." [Doc. No. 41-3, at p. 15.]

22        The SHO also considered defendant Duarte's statement as described above. In addition, the

23  SHO considered statements by three other officers who were nearby at the time of the incident. All

24  three of these officers supported defendant Duarte's statement that plaintiff turned abruptly to the left

25  toward defendant Duarte during the search. Two of these officers said they saw plaintiff's head strike

26  defendant Duarte's right shoulder. [Doc. No. 41-3, at p. 16.] In his defense, plaintiff argued that

27  defendant Duarte and the other officers were fabricating the facts "to cover the unnecessary use of

28  force." [Doc. No. 41-3, at p. 17.]

1    Based on the evidence, the SHO found that defendant Duarte was searching plaintiff when

2  plaintiff turned and attempted to strike defendant Duarte's face with his head.  However, plaintiff

3  missed and hit defendant Duarte's shoulder.  The SHO specifically concluded that the officers

4  descriptions of a "deliberate assault" by plaintiff against defendant Duarte were more credible than

5  plaintiff's claim that the battery was fabricated by the correctional officers to avoid a claim of excessive

6  force.  The SHO also concluded plaintiff would have continued to resist and strike defendant Duarte

7  if he had not been restrained.  In other words, the SHO concluded it was reasonable for defendant

8  Duarte to take steps necessary to restrain plaintiff. The SHO's conclusion is based on defendant

9  Duarte's statement that he "forced [plaintiff] to the ground" in response to plaintiff's aggressive act.

10  [Doc. No. 41-3, at p. 4.] Based on the evidence presented, the SHO found plaintiff guilty of battery on

11  a peace officer in violation of Section 3005(d) of the California Code of Regulations.[2]  As a result, the

12  SHO assessed a 150-day forfeiture of good time credits. [Doc. No. 41-3, at p. 17.]

13    Plaintiff's excessive force allegations arise out of the same facts considered by the SHO in the

14  prison disciplinary proceeding.  No facts are alleged that could be construed as "divisible" from those

15  determined by the SHO.  In order to prevail on his cause of action of excessive force under Section

16  1983 as alleged in the Complaint, plaintiff would have to prove that the facts are entirely inconsistent

17  with the SHO's findings.[3]  Specifically, plaintiff would have to prove that defendant Duarte did not

18  conduct a lawful search but instead shoved plaintiff's face into the wall without warning, that the

19  battery on defendant Duarte was either unintentional or fabricated, and that defendant Duarte did not

20  act reasonably when he took steps to restrain plaintiff.  Proof of these facts would be fundamentally

21

22    [2]    Section 3005(d)(1) of the California Code of Regulations states as follows: "Inmates

23  shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person."

24    [3]    In contrast to the factual findings made by the SHO, plaintiff testified in his deposition

25  that defendant Duarte held his cuffed wrists to guide him out of the cell so that he was facing the wall outside the cell door. [Doc. No. 41-4, at p. 8-9.] According to plaintiff, defendant Duarte did not

26  conduct a search of his person.  Rather, he felt defendant Duarte grab him by the neck and slam his face into the wall. [Doc. No. 41-4, at p. 9-10.] Believing defendant Duarte intended to slam his face

27  into the wall again, plaintiff then turned his body "to the left." Defendant Duarte grabbed his shoulders from behind and tried to push him to the floor.  Plaintiff stumbled a few feet and purposely lowered

28  himself to the floor to avoid being slammed to the floor by defendant Duarte. [Doc. No. 41-4, at p. 11.] Plaintiff also testified that the entire incident "happened fast" or "instantaneously" and took only about 10 to 15 seconds. [Doc. No. 41-4, at p. 11-13.]

1 | inconsistent with the findings made by the SHO in the prison disciplinary proceeding and imply the

2 | invalidity of the results of this proceeding.  It is therefore RECOMMENDED that the District Court

3 | GRANT defendant Duarte's Motion for Summary Judgment based on *Heck v. Humphrey*, 512 U.S. at

4 | 477, and *Edwards v. Balisok*, 520 U.S. at 641.

5 | ### C.  Effect of Plaintiff's Criminal Battery Conviction

6 | Plaintiff also contends that his guilty plea to criminal battery against a custodial officer is not

7 | enough to bar his excessive force claim under the favorable termination doctrine because his plea was

8 | made pursuant to *People v. West* [4] and he did not admit to any particular facts as part of his plea. [Doc.

9 | No. 42, at p. 6-9.]  Because he did not admit to any particular facts, plaintiff believes that his criminal

10 | conviction for battery does not provide a factual basis to preclude his excessive force claim.  According

11 | to plaintiff, all that is necessary for a conviction under Section 243.1 is the "slightest touching," so it

12 | is possible for plaintiff to show his conduct during the event on October 6, 2009 was only minor and

13 | defendant Duarte's response to this conduct constituted excessive force.  Plaintiff believes the force

14 | applied by defendant Duarte was excessive because plaintiff's leg was broken during the incident.  In

15 | short, plaintiff argues that the battery conviction is not necessarily inconsistent with his claim of

16 | excessive force.

17 | Plaintiff's argument ignores the effect of the specific factual findings made by the SHO in the

18 | prison disciplinary proceeding.  It also ignores the evidence in the record establishing that the facts

19 | determined by the SHO in the prison disciplinary proceeding are the exact same facts that served as the

20 | basis for the criminal battery charge and conviction.  The record shows that on June 22, 2010, after the

21 | prison disciplinary proceeding was completed, plaintiff was charged in a felony Complaint filed in El

22 |

23 | [4] Pursuant to *People v. West*, 3 Cal.3d 595, (Cal. 1970), "[i]t is not necessary for the trial court to interrogate the defendant about possible defenses to the charged crime . . . , nor does the trial court have to be convinced of defendant's guilt."  *People v. Holmes* , 32 Cal.4th 432, 441(2004).  However, California Penal Code Section 1192.5. requires California trial courts to ensure that "there is a factual basis for the plea."  Cal. Penal Code § 1192.5.  "[T]he trial court must garner information regarding the factual basis either from the defendant or defense counsel."  *People v. Homes, supra*, 32 Cal.4th at p. 442.  "If the trial court inquires of defense counsel regarding the factual basis, counsel may stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement."  *Id.*  Although defendant cites a probation report in support of the summary judgment motion, the parties did not agree to this document as a factual basis for the plea.

1  Centro Superior Court with a violation of California Penal Code Section 4501.5, battery on a non-

2  confined person by a prisoner, based on an incident that occurred on October 6, 2009.  The non-

3  confined person was identified as defendant Duarte. [Doc. No. 41-2, at p. 5.]

4          As evidenced by a written plea agreement dated August 5, 2010 and a transcript of the change

5  of plea hearing, the charge was amended to allege a violation of California Penal Code Section 243.1,

6  battery against a custodial officer in the performance of his duties.  The plea agreement states that

7  plaintiff agreed to plead "no contest" to the charge of "battery against [a] custodial officer in [the]

8  performance of [his] duties" under California Penal Code Section 243.1.[5]  In exchange for his plea of

9  no contest, the prosecutor agreed to a dismissal of all remaining charges and special allegations and a

10  prison term of sixteen (16) months. The plea agreement specifically states that plaintiff agreed to plead

11  "no contest" to the charge in order to avoid a "harsher consequence" of "25 years to life" if he did not

12  prevail at a trial by jury. [Doc. No. 41-2, at pp. 9-10; Doc. No. 41-2, at p. 18.]

13          During the change of plea hearing, the Superior Court asked for a factual basis for the plea.

14  [Doc. No. 41-2, at p. 17.] Defense counsel responded as follows: "Well, for the record, it is a plea

15  pursuant to the case *People v. West*, and I guess that if the People were to call a witness they will call

16  Officer Duarte who would say that [plaintiff] attempted to head-butt him, and it – may have touched

17  his arms." The Superior Court and the prosecutor agreed this was a sufficient factual basis for the no

18  contest plea. [Doc. No. 41-2, at p. 18.] In accordance with the plea agreement, the El Centro Superior

19  Court sentenced plaintiff to sixteen (16) months in state prison. [Doc. No. 41-2, at p. 34.]  As a result

20  of this same incident, plaintiff admitted in his deposition that he pled guilty to "battering" or "head

21  butting" defendant Duarte. [Doc. No. 41-4, at pp. 15-16.]

22          Essentially, plaintiff would have the Court view his criminal conviction for battery against a

23  custodial officer under California Penal Code Section 243.1 in isolation as if the findings in the prison

24  disciplinary proceeding did not exist.  If anything, plaintiff's conviction under California Penal Code

---

[5]      To prove that a state prisoner is guilty of violating Section 243.1, the People must prove that: (1) the custodial officer was acting within the scope of his or her duties; (2) the prisoner willfully and unlawfully touched the custodial officer in a harmful or offensive manner; and (3) when the prisoner acted, he knew, or reasonably should have known, that the custodial officer was performing his duties. *People v. Gutierrez*, 174 Cal.App.4th 515, 521 (2009). A custodial officer is not acting within the scope of his or duties when unreasonable or excessive force is used. *Id.* at 525.

1  Section 243.1 is further support for defendant Duarte's contention that plaintiff's excessive force claim

2  under Section 1983 is barred under the favorable termination doctrine.  As outlined above, the record

3  establishes that the criminal battery conviction under Section 243.1 arises out of the exact same incident

4  and conduct that was the subject of the prison disciplinary proceeding, even though plaintiff did not

5  admit to a specific factual basis for the conviction on the record in open court.  When plaintiff pled "no

6  contest" to this offense, the SHO had already made factual findings against plaintiff in the prison

7  disciplinary proceeding, and the same evidence would be admissible in a criminal trial.  Indeed, it is

8  apparent that this evidence was the impetus for the "no contest" plea.

9          During his change of plea hearing, plaintiff was advised that his plea of "no contest" would be

10  treated as a guilty plea for all purposes. [Doc. No. 41-2, at p. 18.] "[T]he plea is deemed to constitute

11  a judicial admission of every element of the offense charged." *People v. Chadd*, 28 Cal.3d 739, 748

12  (1981).  As noted above, plaintiff necessarily admitted that defendant Duarte was acting lawfully and

13  without excessive force during the incident on October 6, 2009, as this is one of the elements of a

14  conviction under Section 243.1.  Thus, success on the merits of plaintiff's excessive force claim, would

15  not only imply the invalidity of the prison disciplinary proceeding but would also imply the invalidity

16  of his criminal battery conviction.  He is therefore precluded from pursuing his excessive force claim

17  against defendant Duarte unless he is able to invalidate or overturn the findings made in the prison

18  disciplinary proceeding and his criminal battery conviction.  Plaintiff has not submitted any evidence

19  to even suggest he has succeeded in invalidating or overturning either of these cases and the resulting

20  convictions.  For these reasons, and the other reasons describd herein, it is RECOMMENDED that the

21  District Court GRANT defendant Duarte's Motion for Summary Judgment based on *Heck v. Humphrey*,

22  512 U.S. at 477, and *Edwards v. Balisok*, 520 U.S. at 641.

23                                                  ***Conclusion***

24          Based on the foregoing, this Court RECOMMENDS that defendant's Motion for Summary

25  Judgment be GRANTED.  This report and recommendation will be submitted to the United States

26  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may

27  / / /

28  / / /

1  file written objections with the court and serve a copy on all parties by ***February 15, 2013***. The

2  document shall be captioned "Objections to Report and Recommendation." Any reply to the objections

3  shall be served and filed by ***March 1, 2013***.

4        The parties are advised that failure to file objections within the specified time may waive the

5  right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th

6  Cir.1991).

7        IT IS SO ORDERED.

8  Date: ___2/1___, 2013

9

10

11                                        KAREN S. CRAWFORD
12                                        United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cv0287-AJB(KSC)